Her argument next in number 2007-12-57, Gammino v. Southwestern Bell Gammino v. Southwestern Bell Mark Molyneux Gammino v. Walmart Well, Ned, but then you're going into the argument that they really had enabled or practiced this blocking, but assume that they had. What's the difference? I had the same question that Judge Moore did. Are you predicating any of your argument, put it this way, on the difference between 10XXX-011 and 101XXXX-011? No. Okay. So given that we'll accept that those are functionally the same, what is it that was changed between 1991? Assume for a moment that we credit that the blocking practice was in existence as of May 31st, 1991. What changed between then and now that is material? Well, I mean, whatever blocking progress might have been in place back in 1991, May of 1991, was not a… Are you asking me to assume that it was a type of blocking that Gamino, that's covered by the Gamino patents? Well, if it wasn't, what is it that makes it not covered by the Gamino patents? Because back in 91, there was no how to do it. There were no predetermined digits. There was no take a look at the third plurality, analyze the third plurality, block at the third pluralities in certain locations. That was not in existence back in 1991. One interesting thing… Are you saying that it wasn't enabled? It was not enabled. Let's assume it was enabled. Now, is there a difference? Well, I mean, what they had back then, they didn't have anything back in 1991, so there's a dramatic difference, yes. I'm sorry. I missed what you said. What was it you said? If you assume, I mean, what was really back in place in 1991, it's totally dramatic than what Gamino did. It also was not in existence back in 1991. Okay, but assume that local and 1 plus blocking did exist. I understand that your argument that the Texas PUC documents don't prove that it was actually in existence. I understand that. Assume it was. Assume we disagree with you on that. How does the local and the 1 plus blocking service differ from their current services? Well, you assume they have a local 1 plus blocking. We assume that. What we don't know is how they block the calls. That's the whole problem here. Southwestern Bell tells you, we want to block 10XXX011 calls. That's like you saying to your spouse, oh, please block all calls 2156662222. Just go ahead and do that. If you don't tell the person how to do it, it's totally different. Well, we're back to enablement, right? Well, I don't know if they're running together, but the question is, you know, tell me what about local 1 plus blocking is different than today. Well, there is no local 1 plus blocking back in 1991. It's not a matter of us taking a look at their formula for blocking calls. It never existed back in 1991. Now, the one thing that I think is very interesting about this case is that if you take a look at something that happened in the real world, back in 1991, the court authority of New York and New Jersey had a terrible problem with international fraudulent calls. So bad that it ended up spreading crime throughout the whole court authority. They brought in companies like AT&T, Sprint, MCI and said, gentlemen, fix this problem. It's a major problem. Counsel, in the record on page 777, at the top of the record, the 777 of the appendix, at the top it says existing, and then right under it, it says local and 1 plus blocking option. Do you see that? Yes. So this is the Texas PUC order, and again on page 768, it talks about the local and 1 plus blocking option. At least as early as January of 1991. I'm just trying to, I mean it has the word blocked. I'm trying to understand how you say it doesn't exist. Because these documents actually have the words existing on them. And they talk about the 1 plus and local. I acknowledge these documents exist. What did not exist, so we have no proof of it, is Southwestern Bell being out there and providing blocking or offering blocking based on these services. There's no proof of it. I don't understand. It says existing in the document. Why doesn't that mean that this service exists? Because we asked them for proof to show that they actually blocked it. Why isn't this document the proof? Because this is something that gets filed with the FCC. They're saying that they're going to block these type of calls. No, they don't say they're going to block it. They say the service is existing at the top of the document. Well, it's true these things were filed. It's true they said what they did to the FCC, but they weren't blocking calls that way. Okay, but what evidence did you proffer to contradict this document, which is evidence on its face that it exists? So you're saying the documents aren't to be believed. So why? What evidence did you produce? I mean, they may have been blocking calls based on the documents you just pointed out to me. They weren't blocking them based upon reading the third priority and predetermined digits. They may have been blocking calls back in 1991. That's not part of the case. The case is there is no proof they were blocking calls based on the Gamino Convention. Okay, wasn't that Mr. Tomasi's testimony to that effect? Well, Mr. Tomasi, one of the elements that is blatantly missing is that for Southwestern Bell to do it like Gamino, they have to block based upon the third priority. Let's look at page 768, please. Do you see on page 768, 1, 2, 3, 4, 5 from the bottom? It's telling you what does get blocked and what doesn't get blocked. What doesn't get blocked is 10XXX01. And then you look across, it says not blocked. ICOPR goes to the operator, so it's not blocked. Then you look at the very next line, 10XXX011. There is no difference between those two numbers except the last three digits. And then you look across that column and it says blocked. How could they possibly be excluding the second and not excluding the first if it wasn't focusing on the last three digits? There is no other difference between those two numbers. We don't know how they're doing it. We've asked them questions. You can block these based on country codes, city codes, line codes. There's many different ways to block these things. No, no, no, none of those. There's no difference between those that are listed here. No difference. It tells you what it's going to block and what it's not going to block. And the only difference, I assume what the XXX means is it could be anything. And it could be the same thing in both. The only difference is the 01 and the 011. How is it not evidence that it's blocking based on the third? It's just not evidence based on blocking the third. All right, that is not enough. You have to come out and say how you block. Take a look at Domino's products. The big thing about Domino's products is called the predetermined digits. The user of the invention can go out. I'm sorry. Go ahead. That's okay. Go ahead. As I said, the user of the invention, one thing that's missing from Southwestern Bell, the user of the invention makes a decision. I'm going to decide to block one type of call, two types, five types, 20 types, 25. I'm going to decide to block all calls. That is not based in here. They have to have all the elements of the Domino invention. But they're not blocking all calls. Look, they're blocking only the ones based on the third digit, the third plurality of digits being 011 in this case. Why isn't this evidence that their product is doing exactly this? The evidence is they're saying they can block these calls. That's a question of enablement then. You're saying the issue is this prior art reference doesn't enable for anticipation purposes. Is that what you're saying? This prior art does not have the elements of Domino's claims. Sure it does. It shows the ability of the system to block based on the third plurality. It does not say anything about predetermined digits. It does not talk about looking at the first plurality. I mean there's no prior on the first plurality. Every claim that has blocking based on the first plurality gets over anticipation. It's a matter of course. Southwestern Bell is not claiming they have blocking of Domino's patent based upon reading the first plurality and third plurality. Southwestern Bell has not asserted at all. We have prior art based on the first plurality, and we have a number of claims based on the first plurality. That is a matter of course. That has to be overturned. There's no doubt about that. The one thing that would happen in this case that I think is great background is AT&T back in April of 1991, they said the exact same things that Southwestern Bell did, and they did it the same way. They just listed things. We can block 10XXX011, which is the exact same prior art before us right now. AT&T goes to the Port Authority, and I'm talking about fail. They failed so bad they couldn't solve the problem. They said to the Port Authority, there is no technical solution. Domino comes in. He looks at it. He solves it. He was the hero. He stopped all the crime at the Port Authority because he invented the Domino invention. Just like Southwestern Bell, AT&T could go around all day and say, oh, we block 10XXX011, and they did say it all day. Know why? Because the FCC wanted to do it. Did they ever go out and really do it prior to the Domino invention? Absolutely not. You can look through the record all day long and find no. You won't find one call that they ever blocked. You won't find one customer that bought this service. You won't find one invoice for this service. They had to admit the regulators had this idea, so they put it on paper. Is that proof that they had Domino's, the elements of the Domino's inventions? Absolutely not. AT&T had the exact same prior art and failed miserably. Admitted, geez, there is no technical solution. Now, Mr. Tomasi, you were going to talk about Mr. Tomasi's testimony. Oh, I'm sorry. Thank you very much. Mr. Tomasi is an interested witness. He worked for SWB, still has worked for SWB. Let's set aside the question of whether he's somehow impeached by his interest, but just his testimony in and of itself. Is there some flaw in the testimony in some regard in which that fails to establish that they were capable of doing this third plurality blocking at the time? Well, as you know strongly, we think that's inadmissible. I understand. I understand. But given, passing that. I think Tomasi gives them some evidence in their favor, but doesn't get them there. Where does he fall short? He says nothing about predetermined digits. The way this patent operates is the user says, I'm going to decide, I'm going to block this type of call, not that type of call. That is a very important feature. Extremely important feature. Okay. So, I say I used all 15. You have, on the other hand, we've questioned you heavily, so we'll give you your bottle of time back. Okay. Thank you very much. Thank you. Mr. Pohl. Good morning. May it please the court. My name is Robert Pohl, and I represent Southwestern Valley. I'm happy to answer any questions. I do have a few prepared remarks as well. First, with respect to low-point one-plus blocking, that issue was raised during the opening arguments. That service is the same today as it was on May 31st, 1991.   as I said, the first time that I was in office. I was in office on May 31st, 1991. Offered for sale through the tariff. The price on that day was $23.10. Today, excuse me, it is still on the tariff at the price of $18.85. So, what I understand the logical conclusion of that argument to be that they're accusing local and one-plus under Van Moore the first digits off the table, the predetermined off the table, because the service existed then. It was prior art. The service exists now. Is that part of the argument? That's right. That's what he's directed his infringement case at. His infringement case is directed at call blocking 101, XXXX, 011-plus. We know that's the case. That is exactly what local and one-plus does. It looks at the 101, and it looks at the 011 and blocks the call on that basis. What is their evidence that it looks at the first three digits? You have to look at the first three digits to know where the second set of digits are and to know where the third set of digits are. So, you have to look at the... Well, you have to make sure there are digits there. You have to look at the numbers. You have to look at the numbers. For example, the numbers come across, and if the first three numbers are 101, then you say to yourself, okay, the next four numbers are going to be my carrier identification code, and I need to go out to the fifth following number. Beginning with that fifth following number, if it is 011, then I want to block that call. If I don't, that call is going to be charged to the phone that originates the call. So, the number in the second plurality varies according to the particular digits that are in the first plurality? No. The number in the second plurality... I mean, when I say the number, I mean the number of digits in the second plurality. Yeah, that's right. All right. That's what I understood you to say. The number of digits in the second plurality varies according to what's in the first plurality. Here's an example of that. Let's suppose the first plurality is 1-800. If 1-800 is the first plurality, there will be seven digits that follow, and then you will get to your third plurality. For example, 1-800-321-0288 is the access code to make an international call through AT&T. To make any phone discuss call through AT&T. So, if I go to a pay phone, and I dial 1-800-321-0288... Is that call ATT? Call ATT. Dial down the center. Remember, care talk? 1-800-321-0288, and the next three digits are 011, that call is going to be blocked. That's how the first, second, and third series of digits sets up. And the court is correct. That is explained here in the dial-up plans. The dial-up plans, one is dated June 1990 at APP769, another dated January 1991 at APP768. Those show the blocking of the 101, XXXX, 011 plus variety of calls, based upon the third series of digits. Now, your opposing counsel says, well, that's what they said on the piece of paper, but where's the evidence that they could actually do it? Well, what more proof do you need? I mean, this is documentary evidence of the dial-up plan and the way the dial-up plan worked at that time. In addition, we have a tariff that was approved by the Public Utility Commission of Texas. Southwestern Bell Telephone is a regulated entity, and so for that reason, it has to apply to offer service to customers. It followed... Go ahead. It followed an application with the Public Utility Commission of Texas, it was approved, and as of May 31, 1991, the service was approved, and therefore offered for sale. Southwestern Bell cannot, as a company, tariff services that it cannot provide, and so when a service is tariffed, as Ms. Bradley testified to, it has to be available. Mr. Tomasi testified that service was implemented as of May 31, 1991. Did he testify as to the details of the operation of the service? My recollection is that he did. I think that he did as well. He testified along the same lines that I just spoke about. The way of handling of the first set, the middle set, and then the third set. The blocking... In order to block an international call, you really have to go to the third set, because only there do you distinguish between international calls and domestic calls, and as Judge Moore noticed, only there do you also distinguish between direct dialed international calls, which is the 011 variety, and operator-assisted international calls, which is the 01 plus variety. You know, I don't have a problem with 768 showing that it's going to block based on the third plurality, but 768 doesn't tell us how it's going to do that, and doesn't the anticipatory prior art have to enable? Not in this case, and I'll tell you why, because this is an offer for sale. This product was offered for sale. The service was offered to payphone customers, and that's what's shown in the tariff. The local and 1 plus block is a service that was provided to customers. Well, doesn't it still have to be ready for patenting? It was, in fact, ready for patenting. Ready for patenting in a couple of ways. First, it was, in fact, reduced to practice. We know that first through the testimony of Mr. Tomasi. We know that through all of his documentary items, which includes not only the pre-existing dialing plans, it also includes the government tariff itself, and it also includes, what was it, 777. 777 is interesting, because it is in a document. Wait a minute, but these documents, your point, look, reduced to, ready for patenting can be proven in one of two ways, right? It can be proven by actual reduction of practice, and you're saying Tomasi says it was. Correct. Well, suppose that there was some problem with his testimony, because certainly that's disputed, then you said it can also be shown by these documents. Well, from fact, it's clear that in order for a document to substantiate ready for patentability, it has to be an enabling disclosure. Right. So, how do these documents enable the practice of identification and blocking based on the third plurality? On an ordinary scale, looking at that dialing plan could program a switch to block those calls. Because that person would know, and Mr. Tomasi testified to this, that person would know what calls to allow, what calls to block. At this time, the art of call screening, the art of call identification was well-developed. Also at this time, and Mr. Gamino, I think, identifies that in his patent. Mr. Gamino is not claiming call screening, and that is in the background. Identifying digits and identifying the digits that come across and making decisions on the basis of those digits, that was well-known, well-established. In addition, this involves local and one-plus blocking was implemented on the new digital switches. So in the early 1990s, there was a transition from older analog switches, which had less features, and were less flexible, to newer digital switches. So a person of ordinary skill, like Mr. Tomasi, who calls himself a switch translations person, he would be able to put into the switch the necessary hooks to make the call go as you want it to go. He has testified, I could block a call any number of ways. You tell me what numbers you want me to block, I'll block it. That's how flexible these switches are, and that's how knowledgeable he is as a person of ordinary skill. Is his testimony necessary for us to reach the conclusion that the disclosed services were enabled? Because each time you say reduced practice, you see Tomasi, and then when we talked about whether or not the documents themselves show ready for patenting apart from the reduction to practice, you say Tomasi tells us they do because one of ordinary skill. I'm just wondering if there's a way around Tomasi's testimony. Is there? If not, that's okay. Here's another way to look at it. The identification of the calls to block, the calls to allow, is really, and the identification of those numbers, is about the same as what Camino provides in his own application. In his own application, in his own patent, the 125 and 650, he identifies the calls he's going to block. And what separates those two? What separates those two? Not much, if anything. Mr. Camino recognizes certain dialing sequences needed to be blocked to prevent fraud, and he identified those dialing sequences in his own patent. Here, we have the same sort of disclosure in the Southwestern Fund documents that are well before the critical data. So you say, if I read between the lines of what you're saying, is that it's not as if   electronic mechanism for blocking that no one could possibly have come up with before and that no one did come up with, but it's not as if Mr. Camino came up with before, that what you sound, sounds to me as if you're saying is that once you see the numbers you want blocked, then the blocking is trivial to a person of skill in the art. It's just a matter of picking the numbers, and as soon as you pick the third plurality, you're done. That's right. What we have here in this patent, what we have here in these documents, is algorithmic. You're looking at, Mr. Camino developed an algorithm to block international calls by going up to a third series of digits. Well, when you say developed an algorithm, what I took you to be saying is anyone of skill in the art would have intuitively known immediately how to do that. Yes, that's right. There was nothing about, when you say he developed an algorithm, you're not really arguing that he made an inventive contribution to the algorithm, are you? No, what he really did is he recognized what calls to block. He recognized, just as you stated earlier, he recognized what calls to block by going up to that third plurality, which allowed him to distinguish between calls that had to be allowed at that time, domestic calls and international calls, which couldn't be. But that recognition is one which everyone who ever makes an international call recognizes, right? Yes. If you make an international call, the third digits are recognized. I mean, you know country code or whatever it is? Yeah, country code follows typically the third series of digits. But the third series is one that you dial in. Well, I guess you don't necessarily know that that's international, but it wouldn't take a genius to figure it out, I suppose. 011, 01. At that time, in 1991, were both codes that were used for international calls. Yes. So you would be told, dial the following numbers, and then dial 01, and then dial the country code. Correct. Okay. I should say a few words about non-infringement. We also have a ruling holding non-infringement as well, based upon the court's construction of the preventing function of the claim. The court found the preventing function required the blocking of all international calls if the third series of digits indicates that the call is international. This ruling was based upon the extensive prosecution record in Mr. Guarino's statements before the patent office as to the way his invention worked. Within the patent office record, there's some very clear statements from Mr. Guarino that if the telephone call includes digits in the third plurality that indicate the call is international, the call should be blocked. On that basis, the court did reach the proper ruling that the preventing function does in fact require the blocking of all international calls. You would agree with me that I'm sure neither the spec nor the claims convey the notion that all international calls must be blocked, right? You're relying exclusively, my understanding is, on the statements      The table in column five includes the statement that Mr. Guarino said that if the telephone call includes digits in the third plurality that indicate that the call is international. It includes variants of calls that would be blocked under his scheme. And what you'll notice is what follows the table is this phrase. If entered into a telecommunications device which is not in accordance with present invention, these particular sequences allow an individual who has fraudulently obtained a calling card number to place long distance telephone calls without authorization. But at the top it says in an exemplary embodiment of the present invention. So it's not, I don't, you do, the claims clearly don't require all international blocking, right? Okay. So the claims don't require it. So then if you want to turn to the spec, our language is clear, it basically has to be a clear and unmistakable disclaimer to have us read a limitation into the spec, to the claim which is not otherwise there. I struggle with how column five could amount to such a thing. A clear and unmistakable disclaimer. I agree. This doesn't qualify. Okay. So then let's, that doesn't set us off the table. So then let's look at the prosecution history. What is it in the prosecution history that you think, you can point me to, that amounts to a clear and unmistakable disclaimer of the prevention of all, that requires the prevention of all calls? Well, let's start with some of the examples where he told the examiner exactly how his invention worked. And one good example to start with is found in APP 3078. Would you repeat that number? APP 3078. Thank you. At APP 3078 in paragraph two, and this is a declaration that is attached to an appellate brief, not the appellate     of the appeal in the PTO, Mr. Gamini said in paragraph two that the appellate brief was a declaration of the prevention of all calls. Mr. Gamino writes, my invention involves the entering of digits which are grouped into three separate groupings. If the digits and the third plurality of digits are digits which are used for international dialing, then the call is prevented. This statement is made across the two applications a total of six times. I would like to next turn the panel to APP 3016. Just so you know, counsel, a little later in that same paragraph, he is explaining that this is the invention he has installed in the Port Authority bus terminal. We know that that invention blocked all international calls, but why should we extrapolate from a discussion of the invention that he inserted some place that all claims we should read a limitation in,  claims must block all calls? He refers to it as my invention. He is not talking here about what occurred at the Port Authority. He is talking about the fact that it succeeded because it blocked all international calls. And Mr. Gamino, during the course of prosecution, actually submitted news articles and internal memos from the Port Authority. Those news articles and internal memos describe the fact that all international calls were blocked. In fact, the memo from an individual named Ken Phillips at Port Authority said that there is a small downside with Mr. Gamino's solution in that no international calls can be made. It was a blanket solution that blocked everything. Did it prevent fraud? Absolutely. And I congratulate him for it, of course. But it did so by blocking all international calls. We simply could not make an international call. Very well. Your time has expired. Thank you, Mr. Phillips. I think I mispronounced your name earlier. It's Phuljan. Phuljan. Very good. Mr. Mullen? May I refer to the appendix? Yes. And is this also an exhibit in the appendix? Yes. Thank you. Now I can see it. Can you see it? Yes. This goes  question of where SWB was in 1991. SWB, in 1991, in a brief about the FCC, said that it was attempting to gather relevant data about the time frame and cost of developing software which might allow selective blocking 10XXX. That's the domino pattern, selective blocking 10XXX. Remember that SWB admits they can't do the domino method. But that's not relating to the one plus and the local on that. That's just Southwestern Bell telling the FCC what its capability is. What is this document that you look at? This is a Southwestern Bell brief filed with the FCC. Regarding what? Regarding what the requirements would be for SWB to provide international call box. And they were against it. They didn't want to do it. Despite the fact that they had told you that they were already up and running in 91. In that brief, in 1956, they complained about the costs. They complained that they were not up and ready to do it. It's totally contrary to what SWB told you this morning what they could do in 1991. If you also take a look at a document at the record of 788 SWB by international call blocking, it's described as direct call blocking. Since this service is not in existence today, actual data was not available. It was not in existence. It continued as of November 5th. It was not in existence. This whole prior arc was something they had to file documents with to prove it. They couldn't prove it by clear and convincing evidence. It's simply not there. It didn't exist. Since this service is not in existence today, actual traffic data was not available for       this service.     5th. It continued   5th. It continued as of November 5th. It continued as of November 5th. This is an unsolved case. We have             have confirmed it as of November 5th. We have confirmed it as of November 5th. This is an unsolved case